**James E. KING, Jr., Plaintiff,**

v.

**EMERSON ELECTRIC COMPANY, dba Louisville Ladder Division, Defendant.**

**No. 92–2278–JWL.**

United States District Court, D. Kansas.

Oct. 7, 1993.

**1098**

Michael E. Callen, Callen, Sexton & Shelor, Kansas City, KS, Kenneth P. Seck, Overland Park, KS, Richard D. Fry, William H. Pickett, William H. Pickett, P.C., Kansas City, MO, for plaintiff.

William H. Sanders, Randy P. Scheer, Robert A. Horn, Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, MO, for defendant.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

Plaintiff James King brought this products liability action following an incident in which he sustained injuries after falling off a ladder manufactured by defendant. A jury trial was held in this court during August, 1993. The case was submitted to the jury on various products liability and negligence theories. On August 10, 1993, the jury returned a verdict finding in favor of the defendant.

This matter is currently before the court on plaintiff's motion for new trial (Doc. # 52). Plaintiff contends he is entitled to a new trial because: (1) the court erred in refusing to permit introduction of three petitions in other lawsuits in which defendant was named as a party; (2) the court erred in refusing to permit the jury to view the actual ladder from which he fell, an exemplar ladder and a competitor's ladder which were too large to be brought into the courtroom; and (3) the court erred in refusing to grant a mistrial or hold an evidentiary hearing on the issue of juror misconduct after a juror purportedly made a disparaging remark about plaintiff's lead counsel, William H. Pickett. Defendant has filed a motion opposing plaintiff's motion for new trial. For the reasons set forth below, plaintiff's motion for new trial is denied.

## I. STANDARD OF REVIEW

■ It is well settled that the district court has broad discretion in deciding whether to grant a motion for a new trial. *Royal College Shop v. Northern Ins. Co. of New York,* 895 F.2d 670, 677 (10th Cir.1990); *Patty Precision Products Co. v. Brown & Sharpe Mfg. Co.,* 846 F.2d 1247, 1251 (10th Cir.1988). Such a motion may be granted when the court believes the verdict to be against the weight of the evidence, when prejudicial error has entered the record, or when substantial justice has not been done. *McHargue v. Stokes Div. of Pennwalt Corp.,* 912 F.2d 394, 396 (10th Cir.1990); *Anderson v. Phillips Petroleum Co.,* 861 F.2d 631, 637 (10th Cir.1988); *Holmes v. Wack,* 464 F.2d 86, 88–89 (10th Cir.1972). Before a new trial will be granted, trial errors regarding admissibility of evidence and any other court rulings must affect the substantial rights of the parties. *Rasmussen Drilling, Inc. v. Kerr–McGee Nuclear Corp.,* 571 F.2d 1144, 1148–49 (10th Cir.1978).

## II. DISCUSSION

■ Plaintiff's first argument is that the court erred in refusing to permit the introduction of petitions in three other lawsuits in which defendant was a direct or third-party defendant. Plaintiff contends that each of these petitions for damages identified a collapsing or telescoping ladder as the cause of the injuries to the plaintiffs and that, therefore, the petitions dealt with situations substantially similar to the present lawsuit and were probative on the issues of defect, dangerousness, causation and notice.

■ Evidence of similar accidents involving the same product is admissible to establish notice, the existence of a defect, or to refute testimony given by a defense witness that a given product was designed without safety hazards. *Ponder v. Warren Tool Corp.*, 834 F.2d 1553, 15690 (10th Cir.1987). Generally, however, admission of evidence "regarding prior accidents or complaints is 'predicated upon a showing that the circumstances surrounding them were substantially similar to those involved in the present case.'" *Id.* (quoting *Karns v. Emerson Elec. Co.*, 817 F.2d 1452, 1460 (10th Cir.1987)). "Substantial similarity depends on the underlying theory of the case. 'Evidence proffered to illustrate the existence of a dangerous condition necessitates a high degree of similarity because it weighs directly on the ultimate issue to be decided by the jury.' The requirement of substantial similarity is relaxed, however, when the evidence of other incidents is used to demonstrate notice or awareness of potential defect." *Four Corners Helicopters, Inc. v. Turbomeca, S.A.*, 979 F.2d 1434, 1440 (10th Cir.1992) (quoting *Wheeler v. John Deere Co.*, 862 F.2d 1404 (10th Cir.1988)).

The court disagrees with plaintiff's contention that the complaints from three prior actions in which defendant was a named party were "probative on defect, dangerousness, and causation, as well as notice." The court does agree that the prior complaints would have been probative on the issue of notice, especially due to the relaxed substantial similarity standard when evidence of other incidents is used to demonstrate notice or awareness of a potential defect. However, notice to defendant was not at issue in this case. Defendant admitted at trial that it had notice that a condition known as "false lock" could occur. Because the issue of notice for which plaintiff claims to have sought admission of these exhibits was not contested the court reaffirms its finding that introduction of the petitions on the notice issue would have been cumulative and would potentially have misled or prejudiced the jury.

As to the issues of defect, dangerousness and causation, the court does not believe that

the prior complaints are probative and, in any event, plaintiff failed to make a sufficient showing of substantial similarity. The complaints themselves fail to show anything beyond the fact that defendant had been sued. *See Ponder v. Warren Tool Corp.*, 834 F.2d 1553, 1559 (10th Cir.1987). The complaints are not proof in any manner that the ladders were in fact defective or dangerous at all. They are merely proof that someone had accused defendant of manufacturing a defective or dangerous ladder, not that the ladder is in fact defective or dangerous.

■ Plaintiff's second argument for a new trial is that the court erred in refusing a jury view of the actual ladder from which he fell, an exemplar ladder and a competitor's ladder which were too large to be brought into the courtroom. The actual ladder involved in the accident, along with the exemplar ladder and a competitor's ladder, were stored in the loading dock area behind the courthouse during trial. A smaller extension ladder, which had the same locking mechanisms as the accident ladder, was admitted into evidence and viewed and examined by the jury during trial and deliberations.

Whether a jury is permitted to view evidence outside the courtroom is a matter within the discretion of the trial court. *See United States v. Culpepper*, 834 F.2d 879, 883 (10th Cir.1987); *United States v. Gallagher*, 620 F.2d 797, 801 (10th Cir.1980). In this case, a small scale ladder, with locking mechanisms identical to those contained on the accident ladder, was available in the courtroom. Additionally, plaintiff presented photographs and videotaped demonstrations involving the actual accident ladder[1] and expert and lay testimony describing the ladder and its locking mechanisms, weight and maneuverability. Given the wealth of available evidence depicting the ladder, the court does not believe that it abused its discretion in denying plaintiff's request to assemble the jury at the loading dock for a view of the actual accident ladder.

A further consideration in the court's denial of plaintiff's request was that plaintiff was unable to make any showing that the ladder

---

1. Defendant also presented videotape of a full    scale exemplar ladder in use.

which was purportedly the accident ladder was in the same condition as it had been at the time of the accident. The ladder had been used for an extended period of time by persons other than the plaintiff after the accident. The ladder had received considerable wear and tear and some damage had occurred to the ladder. Because it was uncertain whether the ladder was in the same condition as it was at the time of the accident, and the jury had a wealth of other available evidence available to it depicting the ladder, the court believes that a viewing of the actual ladder would not have been helpful to the jury and could have resulted in confusion of the issues or misleading of the jury.

■ As to the exemplar ladder, the plaintiff made no attempt to link it to his accident. The court believes that a viewing of the exemplar ladder would have added nothing to the jury's knowledge given the wealth of videotape, photographic and testimonial evidence presented to it together with the fact that the replica ladder, with its identical locking mechanisms, was available to the jury. Similarly, plaintiff failed to make any connection between the competitor's ladder and his accident. Plaintiff was free to discuss any design aspects of ladders with his experts, and the court does not believe a viewing of the competitor's ladder would have added anything to the jury's knowledge.

■ Plaintiff's final argument is that the court erred in refusing to grant a mistrial or hold an evidentiary hearing on the issue of juror misconduct regarding an incident after a juror was alleged to have referred to William H. Pickett, plaintiff's lead counsel, as a "bastard." The incident occurred during Mr. Pickett's cross-examination of a witness. Mr. Pickett cut off several of the witness' answers, instructing her that she was only to answer the question asked, and not continue into lengthy explanations or be argumentative. Mr. Pickett was correct in his instruction to the witness, and in fact the court

directed the witness to simply answer the question and not attempt to engage in a quarrel with Mr. Pickett.[2] At some point during the examination of the witness Sean Pickett (who is Mr. Pickett's son and was serving as a paralegal at the trial), alleges that he overheard a male juror state "he makes me so mad. Bastard. Bastard." Sean Pickett also alleged that the two jurors sitting immediately next to the juror who made the alleged comment heard the comment. The matter was brought to the court's attention at the next break. No one besides Sean Pickett had heard the alleged comment. Mr. Pickett contended that the juror had prejudiced his client, and improperly violated his duty not to talk about the case until they were in deliberations. Mr. Pickett requested a mistrial or, in the alternative, that the court interview the juror who was alleged to have made the comment.

When confronted with a claim of juror misconduct, the trial court has wide discretion in deciding how to proceed. *United States v. Easter*, 981 F.2d 1549, 1553 (10th Cir.1992). "[I]t is within the trial court's discretion to determine whether and when to hold an evidentiary hearing on such allegations." *See United States v. Bradshaw*, 787 F.2d 1385, 1389 (10th Cir.1986) (citing with approval *United States v. Hendrix*, 549 F.2d 1225, 1227 (9th Cir.1977)).

■ The court explained its rationale for denying plaintiff's request for a mistrial or an evidentiary hearing at great length on the record, and for those same reasons denies plaintiff's request for a new trial. As the court stated on the record, the court believes it inevitable that as a trial progresses, jurors will form impressions about the lawyers. Smiles, frowns, looks of satisfaction or disgust are not uncommon reactions by jurors to lawyers' conduct. A mistrial should not result from the isolated, spontaneous verbal or non-verbal expression of pleasure or displeasure with conduct of counsel by a juror during trial. Moreover, contrary to plaintiff's assertion of jury bias, the alleged state-

**2.** Having observed Mr. Pickett in several trials, the court believes that the word "intense" would best describe Mr. Pickett's examination style, and he can become somewhat confrontational at

times. However, the court believes Mr. Pickett's style is, generally, extremely effective for his clients and has not found his courtroom behavior to be out of line in any manner.

ment by the juror shows only that the juror did not approve of Mr. Pickett's courtroom demeanor. The juror's conduct does not indicate that he had brought to the trial any preconceived notions about the case or that he had any improper prejudice against Mr. Pickett's client, Mr. King.

The court also still believes that this isolated incident did not warrant an evidentiary hearing or voir dire of individual jurors in chambers. The court stated on the record its concern for doing more harm than good if it had undertaken such a procedure. That course is called for where the court has a reasonable basis to believe that it should inquire about possible improper juror knowledge or inappropriate conduct outside of open court and in a confidential setting. The court does not find the situation here to be along those lines.

The court, moreover, believes that its instructions in this case adequately dealt with any potential for unfair prejudice to the plaintiff. In instruction Number 4, the jurors were instructed to consider only the evidence in the case in reaching their decision. Instruction No. 7 directed the jury to weigh the evidence without favoritism toward or prejudice against either party and told the jury that they must not be influenced by anything not within the issues of the case. Similarly, instruction No. 34 admonished the jury that they were to perform their duty without bias toward any party or person. Additionally, the court advised Mr. Pickett that he was free to tender his own instruction regarding the imputation of prejudice against counsel to that counsel's client, which Mr. Pickett apparently declined to do. Mr. Pickett did, however, make several statements in his closing argument to the effect the jury should not hold any dislike they may have of him against his client.

Absent evidence to the contrary, a court will presume that jurors remain true to their oath and conscientiously observe the instructions and admonitions of the court. *See United States v. Easter*, 981 F.2d 1549, 1553 (10th Cir.1992). The court finds that the mere fact that one juror may have voiced his disapproval of Mr. Pickett's tactics during trial is not evidence that a juror was preju-

diced against plaintiff or that the juror failed to perform his duty as required by his oath and the court's instructions. The verdict of the jury here was in keeping with the evidence in the case and is not reflective of any improper considerations.

**IT IS, THEREFORE, BY THE COURT ORDERED** that plaintiff's motion for new trial (Doc. # 52) is denied.

**IT IS SO ORDERED.**